UNITED STATES DISTRICT COURT
For the Eastern District of New York

| | | |
|---|---|---|
| Georgette Midouin, an individual, | ) | |
| | ) | Case No.: 1:09-cv-04140 (KAM/JO) |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | **PLAINTIFF'S MEMORANDUM OF** |
| | ) | **LAW OPPOSING DEFENDANTS'** |
| Downey Savings and Loan | ) | **MOTION TO DISMISS COMPLAINT** |
| Association, F.A., | ) | |
| U.S. Bank | ) | |
| John & Jane Does 1 – 10 | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

Plaintiff Georgette Midouin, ("Plaintiff"), submits through the undersigned, the

foregoing memorandum of law in support of her opposition to the Rule 12(b)(6)

motion provided by Defendant U.S. Bank, N.A., Successor in interest to the Federal

Deposit Insurance Corp. as Receiver for Downey Savings and Loan Association, F.A.,

("U.S. Bank" or "Defendant").  Plaintiff's claims are well pleaded, sufficiently stated,

and within the extended rescission right for three-years (3) under 15 U.S.C. § 1635(f).

Plaintiff is also entitled to apply rescission after the initiation of any judicial or non-

judicial foreclosure process on her *primary dwelling* under 15 U.S.C. § 1635(i)(1)

*Rescission Rights in Foreclosure.*  Further, Plaintiff may apply violations sufficient to

rescind under 15 U.S.C. § 1640(e) as a matter of defense by recoupment and set-off

when Defendant is attempting to *enforce contractual obligations* or collect a debt.

Moreover, Plaintiff seeks relief under the Real Estate Settlement Procedures Act, 12

1

U.S.C. § 2605 ("RESPA") and declaratory relief against U.S. Bank under Article 22 of the New York Gen. Bus. Law ("GBL") §§ 349 *et seq.*

The Defendant now files a motion to dismiss Plaintiff's claims pursuant to Fed. R. Civ. Proc. 12(b)(6).  Under the deferential standard of review to which Plaintiff is entitled, she has adequately stated claims based on

a.  Defendant's failure to comply with federal rescission mandates,

b.  a misapplication of Finance Charges imposed by Defendant payable by Plaintiff incident to the extension of credit as required by 15 U.S.C. § 1605 and Reg. Z § 226.4, thus;

c.  inaccurately disclosing the Truth in Lending Disclosure Statement, a *material* disclosure violation under 15 U.S.C. § 1602(u); Reg. Z § 226.23(a)(3),

d.  Defendant's unlawful response to Plaintiff's qualified written request ("QWR") under RESPA, a failure to cease collection after receipt of a QWR, a failure to provide any documents or a reasonable explanation why the information sought was unavailable no later than 60 days after receipt of the QWR, and

e.  numerous deceptive acts that induce such confusion, and cause misunderstanding as to source, sponsorship, and certification of goods and services constituting violations under New York GBL.

Plaintiff now asks the Court to deny their motion to dismiss for failure to state a claim.  Plaintiff has chosen this forum because she has federal questions with

2

respect to a failure to comply with federal rescission requirements, and no other remedy at law to seek judicial redress of the foreclosure proceeding to sell Plaintiff's home.

## I.   <u>Introduction and Procedural Background</u>

The initial summary of this dispute is rescission of a consumer credit transaction ("Transaction") governed by federal law, the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), and its implementing regulations at 12 C.F.R. § 226 *et seq.* (Reg. Z).  The subject Transaction is a mortgage loan closed on December 11, 2006 covering real property, the Plaintiffs' *principal dwelling*, and family home.  Plaintiff, on a fixed income, was induced into this Transaction by a mortgage broker without the proper opportunity to evaluate the costs and implications thereof.  In other words, Defendant ratified this Transaction base upon a false income amount listed on an unsigned loan application, without any income or employment verification, without assessment of Plaintiff's ability to pay this obligation, and based upon the asset of Plaintiff's home.  These plausible facts are well stated in Plaintiff's Complaint. In addition, the analysis of hidden Finance Charges and surcharges on refinancing and debt consolidation combined with the addition of real estate security to a debt in favor of Defendant also changes the less conspicuous nature of permitting U.S. Bank to engage in "asset based" lending as Plaintiff's Property value increased over time.  It simultaneously increases the risk of default for the Plaintiff and improves the Defendant's profit, loan principal, as well as beneficial asset in the Plaintiff's home

3

while Defendant retains first lien position.

Accordingly, after numerous attempts to reconcile these factual issues by confronting the mortgage broker, sending written notices, and making several phone calls to the Defendant, Plaintiff sued U.S. Bank to enforce her substantive rescission rights.

On December 14, 2009, U.S. Bank sought a pre-motion conference under Judge Matsumoto's Chamber Practice, Rule IV.B., seeking approval to file the present Rule 12(b)(6) motion. The Court addressed the subject motion to dismiss and ordered the parties to meet personally and seek settlement, file a status report, and schedule a pretrial conference. The parties have been unsuccessful reaching agreement on a settlement. On November 9, 2010, another pre-motion conference was held and the Court ordered Plaintiff to submit all documents needed to apply for a loan modification, and ordered a briefing schedule on the current Rule 12(b)(6) motion. The basis for Defendant's argument is that Plaintiff's rescission claim is time-barred, that Plaintiffs RESPA claims fail to state actual damages, and that Plaintiffs claims under New York GBL is preempted by federal law.

## II.   Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *See Generally* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990) discussing purpose of 12(b)(6) motion and

4

distinguishing it from other Rule 12 motions.

The complaint must be construed on the assumption that all material facts contained in the Complaint are true.  *See e.g.; Olmstead v. Pruco Life Ins. Co.*, 283 F.3d 429, 432 (2nd Cir. 2002).  In short, it must allege "enough facts to state a claim that is *plausible on its face.*"  *Bell Atlantic Corp. v. Twombly* (2007) US , , 127 S.Ct. 1955, 1965— well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely" (emphasis).  The issue raised by a Rule 12(b)(6) motion is whether the facts pleaded would, if established, support a valid claim for relief.  *Neitzke v. Williams* (1989) 490 US 319, 328-329, 109 S. Ct. 1827, 1833; *Bernheim v. Litt*, 79 F3d 318, 321 (2nd Cir. 1996)("Recovery may seem remote and unlikely on the face of the pleading, but that is not the test for dismissal")

The complaint is sufficient if it gives the Defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly* (2007) US , , 127 S. Ct. 1955, 1959 (citing *Conley v. Gibson* (1957) 355 US 41, 47–48, 78 S. Ct. 99, 103).  "The Supreme Court recently expounded upon the *Twombly* standard, explaining that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.*, (quoting *Aschcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed2d 868 (2009))

Moreover, the standard for dismissal in the 2nd Circuit incorporates and must be viewed in light of the simplified pleading standards embodied in the Federal Rules of Civil Procedure; *also see Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514, 122 S. Ct.

992, 152 L.Ed.2d 1 (2002). According to Rule 8(a)(2), a complaint must set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement is adequate so long as it "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 512 (quoting *Conley,* 355 U.S. at 47). In addition, Rule 8 sets forth the basic rules for pleading in federal court. The fundamental requirement imposed by Rule 8 is that all claims or defenses alleged in a pleading shall be set forth in *short and plain terms* and shall be *simple, concise and direct.* No technical forms of pleadings are required, [FRCP 8] and Plaintiff at minimum has met this standard. Federal pleading requirements are extremely liberal. The rules are designed specifically to minimize disputes over pleading technicalities. See FRCP 1, 8(e) ("pleadings must be construed so as to do justice")

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson* (1957) 355 US 41, 45-46, 78 S. Ct. 99; *and see Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984) (Only if no possible construction of the alleged facts will entitle plaintiff to relief should the court grant defendant's motion.)

In this case, it cannot be said unequivocally that Plaintiff is not entitled to a legal remedy for the TILA; Reg. Z, RESPA, and New York GBL violations. Therefore, the Defendant's motion must be denied.

6

### III.   Plaintiff Has Sufficiently Stated A Rescission Claim Under TILA

Indeed, Plaintiff has a continuing right to rescind the Transaction under TILA and Reg. Z until the third business day after receiving both the proper Notice of Right of Rescission and delivery of all *material* disclosures correctly made in a form the Plaintiff may keep, 15 U.S.C. § 1635(a); Reg. Z § 226.23(b); and 15 U.S.C. § 1602(u); Reg. Z § 226.23(a).  The unconditional three-day right is statutorily extended to three-years (3) under 15 U.S.C. § 1635(f); Reg. Z § 226.23(a)(3) if either one of these *material* disclosures is improper.  For example, if the Notice of Right to Cancel has defective content or insufficient number of copies, or the TILA Disclosure Statement is not delivered, or if it is inaccurate, the Plaintiff's right to rescind may be extended from three days to three years under 15 U.S.C. § 1635(f); Reg. Z § 226.23(a)(3).

Defendant argues that Plaintiff has failed to state a rescission claim because Plaintiff received the requisite rescission notices and that the TILA Disclosure Statement does not exceed the allowable tolerances under federal law, both are *material* disclosures for rescission under Reg. Z § 226.23(a), and (b).  U.S. Bank then argues that the Plaintiff is required to plead an ability to tender as a condition of rescission rights.  Nevertheless, Plaintiff's Complaint factually states the TILA Disclosure Statement is inaccurate and sufficiently gives notice of this claim and the grounds upon which it rests.

### A.   The TILA Disclosure Statement Is Inaccurate

A key issue in evaluating accuracy and proper disclosure is any

misstatement of any one of the above listed disclosures constitutes a *material* nondisclosure, unless the Defendant is protected by one of the prospective or retroactive tolerances granted by the 1995 TILA amendments.  Closed-end loans secured by real-estate or a dwelling made after September 30, 1995, are subject to a special set of Finance Charge tolerance rules.  The Finance Charge must be disclosed as a dollar amount disclosed on the TILA Disclosure Statement with a brief description, 15 U.S.C. § 1638(a)(3); Reg. Z § 226.18(d).  For damage remedies, the tolerance in these transactions is $100 and unlimited tolerance for an over-disclosed Finance Charge amount. The Finance Charge tolerance for rescission is $100 or ½ of 1% of the total amount of credit extended, whichever is greater, 15 U.S.C. § 1605(f)(2)(A); Reg. Z § 226.23(g)(1)(i).  The only exception to this applicable tolerance rule is the tolerance for rescission is $35 when a foreclosure has been initiated, 15 U.S.C. § 1635(i)(2); .  In the present case, Plaintiff has specifically alleged the applicable regulation under Reg. Z § 226.23(h)(2), *Special rules for foreclosures, Tolerance for Disclosures*, when a foreclosure is underway, the tolerance for Rescission is $35.00 for an understated "Finance Charge" disclosure, (Complaint ¶ 50).

The next issue is an evaluation of the Finance Charge calculation given the central role of this *material* disclosure.  The basic definition of a Finance Charge has 4 elements as expressed in 15 U.S.C. § 1605(a) and Reg. Z §

226.4(a) and includes:  1) any charge, 2) payable directly or indirectly by the Consumer, 3) imposed directly or indirectly by the Creditor, 4) as an incident to or a condition of the extension of credit.  Any charge which meets this definition is a finance charge unless it is specifically *excluded* elsewhere in TILA or Reg. Z.  Moreover, these *exclusions* must be narrowly construed and the majority of the *exclusions* are authorized only in certain circumstances.  Therefore, certain criteria or precondition must be met to *exclude* the amount from the total Finance Charge calculation.  In order to qualify for the *exclusion* the amount must also be "bona fide and reasonable."

The analysis in Plaintiff's claim first examines the amounts listed on the HUD – 1 Settlement Statement, see Complaint ¶ 27.  An examination of Line 1201, Recording fees discloses $555.00.  Some charges under 15 U.S.C. § 1605(d); Reg. Z § 226.4(e) may be *excluded* from the disclosed Finance Charge calculation if the following conditions are met:

- Itemized and disclosed
- Prescribed by law
- Actually paid to public officials; and
- Charged for investigating, perfecting, releasing, or satisfying a security interest

In other words, $555 component would not be considered a prepaid finance charge and was taken from the proceeds or Amount Financed and not calculated in the Finance Charge calculation.  However, Plaintiff specifically alleges in her Complaint ¶ 28, Exhibit 3, the actual cost of

Recording Fees and filing fees for this Transaction is:  Mortgage $187.00;

Deed $52.00 + Filing Fee $75.00, and Satisfaction of Mortgage $42.00

which equals $356.00.  The difference between these two amounts is equal

to $555 − $356 = $199 of *understated* Finance Charges.  Simply stated, the

arithmetic and the rules of *exclusion* make it apparent on the face of these

documents that the $555 component was allocated to the Amount

Financed, when in fact only $356 was actually paid to a public official base

upon Exhibit 3 of Plaintiff's Complaint.

  Reg. Z does not define "bona fide" or "reasonable."  At minimum, bona

fide should mean that the fee is both legal and actually incurred in the

amount charged.  Reasonable, on the other hand, would be determined by

comparison with rates in the marketplace.  The analysis in this case is quite

simple because only $356 is legal and actually paid to a public official based

upon Exhibit 3, Defendant's padded disclosure deduct an inflated amount

exactly as stated in Plaintiff's Complaint ¶ 27.  Therefore, the padded

amount is not bona fide and reasonable, Complaint ¶ 29, and the excess is a

finance charge.  *See e.g., In re Fryer*, 183 B.R. 322, *motion for reconsideration*

*denied*, 183 B.R. 654 (Bankr. S.D. Ga. 1995)($18 recording fee in actuality

only $5, with $13 difference as finance charge); *Mayo v. Key Fin. Servs., Inc.*, 2

Mass. L. Rptr. No. 13, 268 (1994)($50 recording fee for $42 actual fee

means $8 not bona fide and reasonable).  Accordingly, the TILA Disclosure

Statement is inaccurate and Plaintiff's claim sufficiently states these facts.

## B. The $35 Foreclosure Tolerance Applies To Plaintiff's Rescission Claim

Perhaps the most important aspect of TILA's extended rescission right for the Plaintiff is its value as a defense to foreclosure. Since the Transaction is one subject to the rescission right, and there are valid grounds for exercising the extended right, rescission is a complete defense to foreclosure. *Community Nat'l Bank & Trust v. McClammy*, 525 N.Y.S.2d 629 (App. Div. 1988) (if rescission claim established, would be defense to a foreclosure on a nine year old mortgage); *Family Financial Services v. Spencer*, 677 A.2d 479 (Conn. App. 1996)(creditor's failure to accept rescission notice nullified the mortgage, barring creditor from foreclosure); *Yslas v. D.K. Guenther Builders, Inc.*, 342 So. 2d 859 (Fla. Dist. Ct. App. 1977); *Willis v. Friedman*, Clearinghouse No. 54,564 (Md. Ct. Spec. App. May 2, 2002); *See also Dotter v. Texas Commerce Bank Nat'l Ass'n*, 679 So. 2d 1215 (Fla. Dist. Ct. App. 1996) (reversing lower court's grant of summary judgment for foreclosure due to consumer's defense raised by way of recoupment under TIL which the creditor had not refuted); *FDIC v. Ablin*, 532 N.E.2d 379 (III. App. 1988) (reversing lower court's grant of summary judgment for foreclosure based on nonpayment; since possibility exists that transaction may be rescinded).

Congress carved out special rules of benefit to borrowers like the Plaintiff.  When rescission is raised in defense of a mortgage foreclosure action, the tolerances for errors in the finance charge and related disclosures is just $35, 15 U.S.C. § 1635(i)(2).

The statute is explicit that the defensive rescission rules operate irrespective of whether the threatened foreclosure is a judicial or non-judicial one.  15 U.S.C. § 1635(i)(1), (2); *See* i.e., *Layell v. Home Loan & Investment Bank*, 244 B.R. 345 (E.D. Va. 1999) (applying $35 tolerance in suit challenging non-judicial foreclosure), *app. dismissed as interlocutory*, 211 F.3d 1265 (4th Cir. 2000)]

The lower tolerances apply whether the Plaintiff raises rescission in a separate action or as a defense in the foreclosure case.  *See Riopta v. Amresco Residential Mortgage Corp.*, 101 F. Supp. 2d 1326 (D. Haw. 1999).  All the statute requires is that the consumer be exercising rescission rights "after" the initiation of a foreclosure. 15 U.S.C. § 1635(i)(2)

The question now arises for the Court as when a rescission switches from the affirmative rules to the defensive ones.  Plaintiff has factually alleged that on March 20, 2009, through her undersigned counsel, a valid written rescission notice and QWR was sent to U.S. Bank, Complaint ¶ 43, Exhibit 4.  In such a scenario, the affirmative rules would be applied.  However, the language of the statute provides that the special rules kick in

"after the initiation of any judicial or nonjudicial foreclosure process on the primary dwelling .... " [*Id*].  Arguably, the process is "initiated" at least by the time the Defendant first overtly signals its intent to foreclose, by whatever means.  In this case it was signaled by U.S. Bank's August 5, 2009 Notice of Intent to Foreclose, as admitted in their memorandum at page 4, also see Complaint ¶ 48, Exhibit 6.

Since there are questions unsettled by the 1995 amendments, it is conceivable that Defendant would try to back off of a threatened foreclosure somehow, in order to bring itself into the greater protective fold of affirmative rescission or damage immunity.  However, U.S. Bank argues that the initiation of the foreclosure did not begin until June 23, 2010 and that somehow the application of federal law merely describes their filing in the New York Sup. Ct., Queens County as the initiation of foreclosure.

This argument is contrary to TILA because once the Defendant sets in motion a foreclosure process, the standards by which it will be judged are fixed as the defensive standards.  Anything else would simply lead to chaos.

Another question that arises is whether affirmative or defensive standards apply when foreclosure is initiated after the Plaintiff has sent her written cancellation notice, or has filed an action to enforce her substantive rescission rights.  The statute specifically states that if the lender elects to initiate a foreclosure, "the obligor ***shall*** have a right to rescind the

transaction ... provided by this section" if the more strict standards are not complied with. 15 U.S.C. § 1635(i)(1), (2) (emphasis added).  That language mandates that the initiation of a foreclosure is the crucial deciding factor-if that is the choice the lender makes, that choice sets the standards by which it will be judged.   Therefore, upon receipt of U.S. Bank's August 5, 2009 Notice of Intent to Foreclose, as admitted in their memorandum at page 4, Complaint ¶ 48, Exhibit 6, the foreclosure process had been initiated and the defensive rule apply.   Because these facts are sufficiently stated in Plaintiff's Complaint, their motion to dismiss the rescission claim must apply defensive rules and fails as a matter of federal law.

## C.  Plaintiff's Tender Obligations Are Not Based Upon Whether A Valid TILA Rescission Claim Exists

Plaintiff has exercised her substantive rescission rights because she is entitled to do so under federal law.  Otherwise Plaintiff is delighted to tender a correct mathematical balance to restore the *status quo ante*. Defendant's argument proceeds with cases addressing "conditional rescission" and the courts equitable authority to adjust steps 2 and 3 of the rescission process.  See *Official Staff Commentary* § 226.23(d)(1) – (4) for guidance on the *Effects of rescission*.  Theoretically, where a creditor in good faith disputes the threshold question of whether there is a violation which triggers the continuing rescission right, it should seek judicial guidance from

14

this Court. *See e.g., Decision One Mortgage Co., v. Fraley*, 2000 WL 1889700 (6th Cir. Dec. 19, 2000), and see *In re Lynch*, 170 B.R. 26 (Bankr. D.N.H. 1994). Contrary to a lawful position, U.S. Bank intentionally refuses to seek judicial guidance as to the rights and obligations of the parties. Missing from their common law rescission argument is the Post-Simplification 1995 amendments to TILA that overturned all Pre-Simplification cases. For example, any violation which still triggers the extended rescission right despite the 1995 amendments is clearly one Congress deemed important, warranting the full force of the law. TILA rescission was intended to be a "painless remedy" for the Plaintiff, "placing all burdens on the creditor," a purposeful departure from common law rescission. Therefore, achieving the *status quo ante*, in the rescission right context, must take a secondary role to the enforcement role. By definition, Defendant has "unclean hands" since the dispute arises only by virtue of a *material* TILA disclosure violation, their refusal to honor Plaintiff's valid Rescission Notice, and their intentional refusal to cease collection of finance charges and other charges; (see Complaint ¶¶ 43, 47, 48, 49, Exhibits 4, 5, and 6, stated with specific facts). Defendants must persuade this Court to deviate from federal law by pleading an alleged willingness or ability to tender or that tender is a condition precedent to a valid rescission claim. Plaintiff already requested an accounting balance so that she could tender in her rescission notice,

Exhibit 4, and see Complaint ¶ 52, "…so that Plaintiff may tender any balance and extinguish the Transaction by operation of law."

Defendant presents no binding authority that a rescission claim must state such a pleading requirement.  In the case *Velazquez v. Homeamerican Credit, Inc.*, 254 F.Supp. 2d 1043 (N.D. Ill 2003), the court stated:  "creditor may not unilaterally impose its will on the process and demand tender as a condition of rescission."  The law is designed to be self-enforcing, i.e., cancellation of the security interest occurs by operation of law upon Plaintiff's rescission notice.  Once she rescinded, the statute and regulation specify the 3 sequential steps that MUST be followed.  Accordingly, "The courts, at any time during the rescission process, may impose equitable conditions to ensure that the consumer meets its obligations ***after*** the creditor has performed his obligations as required under the act."  S. Rep. No. 368, 96th Cong., 2d Sess. at 29, reprinted in 1980 U.S.C.C.A.N. 236, 265; [emphasis added].  To the contrary, the injury to the Defendant, at this point is the self imposed injuries they brought on themselves, and they have not advanced any arguments as to why equity should warrant any modification yet.  Because these facts are present, well pleaded and sufficiently stated in the Complaint, they defeat Defendants argument.  In the alternative, Plaintiff will agree to signing a new security instrument based upon an accurate mathematical post-rescission amount to protect the

16

interest of U.S. Bank.  Thus, Defendant has no other monetary loss.

## IV.   Plaintiff's TILA Claims Are Not Barred As A Defensive Matter In Recoupment And These Facts Are Well Stated

U.S. Bank contends that Plaintiff cannot recover her relief because under 15 U.S.C. § 1640(e), Plaintiff's damage claims are time barred.  Their argument focuses on the cases citing standardized damage claims and damages asserted affirmatively.  However, Plaintiff does not concede to this argument because under section 1640(e) it is clear that recoupment claims are not barred by the otherwise applicable one year statute of limitations for TILA damage causes of action.

Missing from Defendant's analysis is a basic understanding of the concept of recoupment, and its limits.  Recoupment is a well-established device of common law origin that enables a party to set-off against asserted liability, whether a claim or counterclaim, arising out of the transaction forming the basis for the suit, which is otherwise time barred.  *Reiter v. Cooper*, 507 U.S. 258, 264, 113 S.Ct. 1213, 122 L. Ed. 2d 604, 615 (1993).

Recoupment survives as long as the cause of action on the note exists.  *Dawe v. Merchants Mortg. and Trust Corp.*, 683 P.2d 796, 799 (Colo. 1984); *In re Shaw*, 178 B.R. 380, 386 (Bankr. D.N.J. 1994)("Recoupment claims at common law are limited to the extent of the plaintiff's claim and can never result in an affirmative recovery for the defendant.").  In the present case, an action on the original promissory note does exist.  The availability of recoupment in contract based cases has been repeatedly recognized and endorsed by the Supreme Court.  *Bull v. United States*, 295 U.S. 247, 262, 55 S.Ct. 695, 79 L. Ed. 1421, (1935):

> [R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded.  Such a defense is never barred by the statute of limitations so long as the main action itself is timely.

Similarly, the Eleventh Circuit interpreted the decision in *Bull* to establish a

three part test for recoupment: "[the claimant] must show that (1) the TILA violation and the creditor's debt arose from the same transaction, (2) [the claimant] is asserting her claim as a defense, and (3) the main action is timely." *Id.*, quoting *Smith v. Am. Fin. Sys., Inc.* (*In re Smith*), 737 F.2d 1549, 1553 (11th Cir. 1984). The same conclusion was reached in *In re McNinch*, 250 B. R. 848 (W.D. Pa. 2000), *aff'd without op.*, 281 F.3d 222 (3rd Cir 2001); *See also Maddox v. Kentucky Finance Co.*, 736 F.2d 380, 382 (6th Cir. 1984).

In addition, the statute is explicit that the defensive rescission rules operate irrespective of whether the threatened foreclosure is a judicial or non-judicial one, 15 U.S.C. § 1635(i)(1), (2), see *Layell v. Home Loan & Investment Bank*, 244 B.R. 345 (E.D. Va. 1999) (applying $35 tolerance in suit challenging non-judicial foreclosure), *app. dismissed as interlocutory*, 211 F.3d 1265 (4th Cir. 2000). Furthermore, in states with non-judicial foreclosure systems, and even prior to the 1995 amendments to TILA, courts have held that the "mere fact" that a borrower is asserting a recoupment as a plaintiff does not precluding the finding that a TILA claim was raised defensively. *See In the Matter of Coxson*, 43 F.3d 189, 194 (5th Cir. 1995); also see e.g., *In re Jones*, 122 B.R. 246 (W.D. Pa. 1990).

In other words, recoupment rights do not depend upon the happenstance of whether the Plaintiff lives in a judicial or non-judicial foreclosure state. Accordingly, to the extent that an argument can be made that recoupment is available, it should be unaffected by whether the foreclosure is judicial or non-judicial. The defense must be related to the nature of the demand made by the other party, that is, it must arise

18

from the same contractual transaction. *See e.g., Algrant v. Evergreen Valley Nurseries L.P.*, 126 F.3d 178, 184 (3d Cir.1997) (quoting *Household Consumer Discount Co. v. Vespaziani*, 490 Pa. 209, 415 A.2d 689, 694 (1980); *Also See 20 Am. Jur 2d Counterclaim, Recoupment, etc. § 5* ("…either because the plaintiff has not complied with some cross-obligation of the contract on which he or she sues or because the plaintiff has violated some legal duty in the making or performance of that contract.").

These characteristics of the right of recoupment are important. They defeat Defendant's argument that the claim is time barred. A proper analysis of the right of recoupment, as discussed above, demonstrates that such rights are simply not time barred when asserted *defensively*. The instant case involves a circumstance in which Plaintiff is asserting her rights defensively in *response* to a foreclosure proceeding initiated upon receipt of U.S. Bank's August 5, 2009 Notice of Intent to Foreclose, as admitted in their memorandum at page 4, also see Complaint ¶ 48, Exhibit 6. It is well established that if one party, such as U.S. Bank, is permitted to pursue a claim, such as a foreclosure proceeding, the other party, Plaintiff, must be permitted to assert her defenses thereto. Therefore, Plaintiff's recoupment claims are not time-barred, but rather asserted appropriately under the current circumstances. Because these allegations are present, well pleaded and sufficiently stated in the Complaint, Defendant's motion to dismiss must fail as a matter of law.

## V.   RESPA Claims

Plaintiff's complaint has alleged very specific facts under section 2605 of

RESPA, the Cranston-Gonzales National Affordable Housing Act, Pub. L. No. 101-625, 104 Stat. 4079 (1999), also known as the "Servicer Act." U.S. Bank's obligation to respond to Plaintiff's inquiry is triggered by its receipt of the "qualified written request," or QWR. The written inquiry must be treated as a QWR if it includes the following: 1) "reasons for the belief of the borrower, to the extent applicable, that the account is in error," or 2) "provides sufficient detail to the servicer regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B)(ii). While Plaintiff's inquiry can do both, dispute Defendant's continued application of interest and fees creating an account error, or seek information, either request alone can be a QWR. The condition for treatment as a QWR in this case is easily met, *see e.g.*, *McDonald v. Wash. Mut. Bank*, 2000 U.S. Dist. LEXIS 11496 (N.D. Ill. June 26, 2000)("§ 2605(e)(1)(B) does not require much for a correspondence to constitute a 'qualified written request'"). An examination of Plaintiff's QWR is consistent with these elements.

For example, Plaintiff's QWR is written, a) specifically identifies the Plaintiff and her account number, b) requests an accounting, c) seeks information regarding the true owner of this obligation, d) enumerates requests regarding application of previous principal and interest payments pursuant to the loan terms, and e) disputes the continued application of finance charges and any other charges applied to the account due to rescission.

Significantly, section 2605(e) is not simply a disclosure statute; it requires U.S.

Bank to take affirmative action to correct servicing errors. For example, Plaintiff may invoke the protection of the Servicer Act by challenging the misapplication of payments, improper late fees or other charges, or an erroneous claim of default. Plaintiff has sufficiently stated her actual damages. If this Defendant fails to honor a valid rescission notice and fully comply by providing a credit to Plaintiff's account, then Plaintiff has actual damage to the extent of their failure to credit the account, Complaint ¶ 71. Accordingly, Defendants violated RESPA, 12 U.S.C. § 2605(e)(2)(A), by failing to make any appropriate corrections to the Plaintiff's account in response to the QWR and valid Rescission Notice, including the crediting of finance charges, and other charges. At minimum, actual damages would include all economic injuries that directly flow from Defendant's failure to make appropriate corrections to the account. These damages may encompass: cost of photocopies and postage in sending the QWR, time spent obtaining compliance, transportation cost, inconvenience, additional interest, late fees, foreclosure costs, loss of home through foreclosure, denial of access to credit, and damage to credit rating. Courts have been willing to broadly define the scope of actual damages, see e.g. *Cortez v. Keystone Bank*, 2000 U.S. Dist. LEXIS 5705 (E.D. Pa. May 2, 2000); *Johnstone v. Bank of Am.*, 173 F. Supp 2d 809 (N.D. Ill. 2001); *Katz v. The Dime Sav. Bank*, 992 F. Supp. 250 (W.D. N.Y. 1997). Even though the *Katz* Court addressed the issue that actual damages did not include emotional distress based upon the dubious finding that the Servicer Act was not a consumer protection statute, other courts have since rejected the *Katz* holding. In

other words, other courts have construed RESPA's actual damages provision to include emotional distress damages on the basis that RESPA is a remedial consumer statute that should be construed liberally, *Ploog v. Homeside Lending, Inc.*, 209 F. Supp. 2d 863 (N.D. Ill. 2002); *Johnstone v. Bank of Am.*, 173 F. Supp 2d 809 (N.D. Ill. 2001).

Plaintiff does allege that Defendant violated 12 U.S.C. § 2605(e)(3), by providing information to consumer reporting agencies regarding overdue payments allegedly owed by the Plaintiff that were related to (and the subject matter of) the QWR, Complaint ¶ 73. During the sixty-day response period to a QWR relating to a payment dispute, U.S. Bank cannot give any adverse information to a credit reporting agency concerning the payments subject to the request. 12 U.S.C. § 2605(e)(3); Reg. X , C.F.R. § 3500.21(e)(4)(i). In this case, Plaintiff requested an accounting so that she could tender any balance, while Defendant insisted that they were reviewing the loan documents and continued their application of principle, interest, and other charges. Thus a dispute was created base upon the substance of both parties' responses. If Plaintiffs notice qualifies as a QWR, and even one of the requests applies to a servicing defined activity under 12 U.S.C. § 2605(i)(3), then reporting any adverse information to a credit reporting agency violates RESPA. Whether U.S. Bank violated this provision is a question of fact that should survive their motion to dismiss.

**VI.    Plaintiff Has Alleged That Defendant's Conduct Is Consumer-Oriented**

According to Defendant's argument, Plaintiff must allege facts focusing on an element that the act or practice was consumer-oriented.  Plaintiff has alleged as follows:

- that she is an elderly, 65 year old *consumer* and a *natural person* as that term is defined under 15 U.S.C. § 1602(h), Complaint ¶ 5;

- that Defendant Downey Savings & Loan Association, F.A.  is a *creditor* as that term is defined under 15 U.S.C. § 1602(f) and Reg. Z § 226.2(a)(17) and at all times relevant hereto is regularly engaged in the business of extending *consumer credit* for which a finance charge is or may be imposed and is payable in more than four installments by written agreement, Complaint ¶ 6;

- The mere loss of a statutory right to disclosure is an injury that gives the consumer standing for Article III purposes, *DeMando v. Morris*, 206 F.3d 1300 (9th Cir. 2000), Complaint ¶ 12;

- The Transaction required Plaintiff to pay money arising out of a transaction in which money, property, or goods and services were the subject thereof and the same were primarily for personal, family and household purposes, Complaint ¶ 33;

- Plaintiff is an elderly 65 year old natural person and consumer within the scope of New York Gen. Bus. Law §§ 349 *et seq*., and § 349-c, Complaint ¶ 79.

23

Each one of these allegations are consumer-oriented and would sufficiently state the consumer-oriented practice defined by this element. The argument itself would be contrary to Rule 8(a) pleading standards. The fundamental requirement imposed by Rule 8 is that all claims or defenses alleged in a pleading shall be set forth in *short and plain terms* and shall be *simple, concise and direct*. The grounds for dismissal would not be based upon this pleading technicality alone. Thus, Plaintiff's allegations are already consumer-oriented and sufficiently state a claim for relief under sect 349 of the New York GBL

## VII.    Conclusion

In conclusion, Plaintiff will not argue against whether the Home Owners' Loan Act ("HOLA") preempts state law. HOLA is an entirely different statute, and no authority exists that a Truth in Lending rescission claim standing alone preempts the New York GBL. Truth in Lending does not preempt state laws that deal with issues other than disclosure requirements, nor does creditor compliance insulate them from other state consumer credit protection laws. Generally, the federal Truth in Lending Act does not affect any state disclosure law unless the state law is inconsistent with federal law, and then only to the extent of the inconsistency, see 15 U.S.C. § 1610(a)(1); Reg. Z § 226.28(a). For the foregoing reasons, Plaintiff's factual allegations support a claim upon which relief can be granted, and Plaintiff requests the Court deny Defendant's motion to dismiss, and retain the case on the Court's docket. In the alternative, pending the outcome of Plaintiff's loan modification, if the Court

determines Plaintiff has failed to sufficiently state a claim, Plaintiff asks the Court to

grant leave to amend the Complaint in a manner that corrects all such defects or

elements.  Otherwise, Defendant should be required to answer this claim

This the 11th Day of January, 2011                    Prepared & Signed by:

_____

The Law Offices of Roberta Chambers
Roberta Chambers, R.N., Esq.
110-21 Francis Lewis Blvd.
Queens Village, New York 11429
Phone # 718-776-1200
Email:  RNLAWYER@aol.com
Attorney(s) for Plaintiff

## CERTIFICATE OF SERVICE

        I hereby certify that a true and correct copy of the foregoing Plaintiff's
Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint was filed with the
clerk electronically using the CM/ECF system in the U.S. District Court, Eastern
District of New York and was sent via U.S. Mail to the following interest parties:

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Attn.:  Lisa M. Lewis
30 Rockefeller Plaza, 24th Floor
New York, New York 10112

*Attorneys for Defendants U.S. Bank, N.A. et al.*

_____

The Law Offices of Roberta Chambers
Roberta Chambers, R.N., Esq.
110-21 Francis Lewis Blvd.
Queens Village, New York 11429
Phone # 718-776-1200
Email:  RNLAWYER@aol.com
Attorney(s) for Plaintiff