UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
GEORGIA MIDOUIN, an individual,

             Plaintiff,

    - against –           **MEMORANDUM & ORDER**
                             09-CV-4140 (KAM)(JO)
DOWNEY SAVINGS AND LOAN
ASSOCIATION, F.A.,
U.S. BANK,
JOHN & JANE DOES 1-10,

             Defendants.
----------------------------------X
MATSUMOTO, UNITED STATES DISTRICT JUDGE:

        Georgia Midouin ("plaintiff") commenced this action on September 25, 2009 against Downey Savings and Loan Association, F.A. ("Downey"), U.S. Bank National Association ("U.S. Bank"), and John & Jane Does 1-10 (collectively, "defendants"), asserting claims for (1) rescission pursuant to the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") (Count One); (2) damages pursuant to TILA (Count Two); (3) damages pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA") (Count Three); and (4) damages pursuant to New York General Business Law ("NYGBL") § 349 (Count Four).  (*See* ECF No. 1, Complaint, filed 9/25/2009 ("Compl."), ¶¶ 55-98.)  Presently before the court is a motion to dismiss the Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by U.S. Bank as successor in interest to the Federal Deposit Insurance Corporation ("FDIC"), which was

appointed as receiver for Downey.  (*See* ECF No. 19-2, Def. Mem. at 1.)[1]  For the reasons discussed below, defendants' motion is granted in part and denied in part.

## BACKGROUND

The facts as alleged in the Complaint, which the court accepts as true for purposes of defendants' Rule 12(b)(6) motion, are as follows.  This action arises out of a closed-end credit transaction in which Downey provided plaintiff a $325,000 loan to refinance and cash out the value of her home and existing mortgage loan on her primary residence located in Cambria Heights, New York (the "property").  (ECF No. 1, Compl. ¶¶ 5, 14, 35.)  In 2006, plaintiff submitted financial information to First Rate Capital Corporation ("First Rate"), to apply for a loan to refinance her mortgage.  (*Id.* ¶¶ 14-15.) Plaintiff alleges that although First Rate did not request any income verification, First Rate assured her that she qualified for mortgage loan approval and promised her that she could obtain a loan at the best possible interest rate despite her fixed income.  (*Id.* ¶¶ 16-17.)

On November 24, 2006, First Rate provided plaintiff with a Good Faith Estimate of Settlement Charges from Downey,

---

[1]  To the extent a claim alleged against U.S. Bank is dismissed in this Memorandum and Order, that claim is also dismissed against defendants Downey and John and Jane Does 1-10.  Accordingly, although the instant motion was filed by U.S. Bank, the court will refer to it as "defendants' motion."

which set forth estimated settlement charges totaling $5,989.88, and a Federal Truth-In-Lending Disclosure Statement. (*Id.* ¶¶ 18-19; *see also id.* at 19.)[2]  Plaintiff subsequently accepted the proposed mortgage loan with Downey and plaintiff attended the settlement and closing (the "Closing") on December 11, 2006. (*Id.* ¶¶ 21-24.)

Plaintiff alleges that at the Closing, Downey provided her with a $325,000 loan and copies of the following documents: (i) a Good Faith Estimate of Settlement Charges, dated December 11, 2006, (the "Good Faith Estimate"), (*id.* at 20, 21);[3] (ii) a Federal Truth-in-Lending Disclosure Statement, dated December 11, 2006, (the "TILA Disclosure Statement"), (*id.* at 22); (iii) four copies of a Notice of Right to Cancel, dated December 11, 2006, (*id.* at 23-26); (iv) two copies of a U.S. Department of Housing and Urban Development Settlement Statement, dated December 11, 2006, (the "HUD-1 Settlement Statement"), (*id.* at 27-30); (v) an unsigned Uniform Residential Loan Application, (*id.* at 31-34); (vi) the Lender's Instructions, Itemization of Charges, dated December 11, 2006, (*id.* at 35); and (vii) a Statement of Mortgage Closing, (*id.* at 36). (*Id.* ¶ 24.)

---

[2]  Citations to page numbers in the Complaint are to those page numbers automatically assigned by the court's electronic case filing system.

[3]  The Complaint attaches two Good Faith Estimates of Settlement Charges, both dated December 11, 2006, reflecting different amounts charged and different total estimated charges. (*See* ECF No. 1, Compl. at 20, 21.)

The Good Faith Estimate that plaintiff received at the Closing set forth estimated settlement charges totaling more than $17,000, including $360 in recording fees. (*See id.* at 20, 21.)

The TILA Disclosure Statement stated that the "annual percentage rate" was 8.005 percent, the "finance charge" was $627,119.76, and the "amount finance[d]" was $321,704.60. (*Id.* at 22.)  Thus, the total amount owed pursuant to the loan was $948,824.36. (*Id.*)  The TILA Disclosure Statement also set forth the loan repayment schedule and indicated that the loan contained a variable interest rate. (*See id.*)

The HUD-1 Settlement Statement, which plaintiff signed on December 11, 2006, itemized settlement charges that were to be paid from the proceeds of the loan but were not included in the amount disclosed on the TILA Disclosure Statement as "finance charges." (*See id.* at 30.)  These settlement charges totaled $17,843.23, including, but not limited to: (i) $195.00 for recording the deed; (ii) $280.00 for recording the mortgage; (iii) $80.00 for the release. (*Id.* at 30.)  In addition, the HUD-1 Settlement Statement indicated that plaintiff received a cash payment of $45,109.99. (*Id.* at 29.)

The Uniform Residential Loan Application that plaintiff received at the Closing, which plaintiff alleges she

did not sign, stated that plaintiff's total monthly income was $5,469.00.  (*Id.* at 32.)

Plaintiff also alleges that at the Closing, she did not receive a Variable Rate Promissory Note, an Adjustable Rate Rider, an Equal Credit Opportunity Act Disclosure, a Fair Housing Act Disclosure, a Privacy Disclosure, a Patriot Act Disclosure, or a Consumer Credit Score Disclosure.  (*Id.* ¶ 25.)

At some point after the Closing, plaintiff's monthly payments on her loan began to rise.  (*Id.* ¶ 37.)  Plaintiff asserts that after reviewing the loan documents, she noticed for the first time that her monthly income was inflated on the Uniform Residential Loan Application.  (*Id.* ¶ 38.)[4]  After making this discovery, plaintiff contacted First Rate and demanded that the mortgage broker correct her monthly income and adjust her monthly payment schedule accordingly.  (*Id.* ¶ 39.)  However, the mortgage broker refused to change the information or facilitate a work-out agreement with U.S. Bank, which had taken over for Downey as the lender.  (*Id.* ¶ 40; *see also* ECF No. 19-2, Memorandum of Law In Support of Defendant U.S. Bank's Motion To Dismiss Plaintiff's Complaint ("Def. Mem.") at 4 n.2.) Nonetheless, plaintiff continued making monthly payments on her

---

[4]  Although plaintiff refers to the "Universal Residential Loan Application," (ECF No. 1, Compl. ¶ 38), the court notes that the document attached to the Complaint is titled a "Uniform Residential Loan Application", (*id.* at 31; *see also id.* ¶ 24).

loan using the cash proceeds that she received at the Closing. (ECF No. 1, Compl. ¶ 41.)

On March 20, 2009, plaintiff's counsel sent Downey a letter seeking rescission of plaintiff's loan pursuant to the Truth in Lending Act, 15 U.S.C. § 1635. (*Id.* ¶ 43; *see also id.* at 59-63.) The letter alleged, *inter alia*, (i) inaccuracies in the HUD-1 Settlement Statement; (ii) a discrepancy between the loan amount stated on the Uniform Residential Loan Application and the amount stated in public records; and (iii) a failure to provide plaintiff with all the required documents at Closing. (*See id.* ¶¶ 44-46; *see also id.* at 60-61.) The letter asserted that upon rescission, plaintiff "will tender all sums to which [Downey] is entitled." (*Id.* at 62.) Finally, the letter demanded certified copies of several documents from plaintiff's loan file. (*See id.* at 62-63.)

On April 3, 2009, U.S. Bank responded to plaintiff's counsel, stating that the requests made in her March 20, 2009 letter were being reviewed. (*Id.* ¶ 47; *see also id.* at 64.) Plaintiff subsequently failed to make her July 1, 2009 and subsequent loan payments, thereby defaulting on her loan. (*Id.* ¶¶ 41-42; *see also id.* at 66-67.) On August 5, 2009, U.S. Bank sent plaintiff a Notice of Intent to Foreclose, which informed plaintiff that unless she made her overdue loan payments within 30 days of the notice, U.S. Bank "will have no option but to

begin foreclosure proceedings without further notice." (*Id.* ¶ 48; *see also id.* at 65.)

Plaintiff filed the instant action on September 25, 2009, alleging violations of the Truth in Lending Act, the Real Estate Settlement Procedures Act, and New York General Business Law. (*See generally id.*)[5] Plaintiff seeks rescission of her loan, statutory and actual damages, and attorney's fees. (*See id.* at 16-17.) In addition, she seeks to enjoin defendants from "instituting, prosecuting, or maintaining a proceeding" on plaintiff's property or "from otherwise taking any steps to deprive Plaintiff's ownership" of her property. (*Id.* at 16.)

U.S. Bank served plaintiff with the instant motion to dismiss on December 17, 2010. (*See* ECF No. 19, Notice of Motion, dated 12/17/2010; ECF No. 19-2, Def. Mem.) Plaintiff opposed the motion on January 11, 2011. (*See* ECF No. 18, Plaintiff's Motion Opposing Defendants' Motion To Dismiss Complaint, dated 1/11/11; ECF No. 18-3, Plaintiff's Memorandum of Law Opposing Defendants' Motion To Dismiss, dated 1/11/11

---

[5]  Plaintiff also alleges that Downey is "not duly authorized to write mortgage loans in the State of New York and [is] not listed by the State of New York Banking Department website search engine." (ECF No. 1, Compl. ¶ 32.)  Pursuant to New York Banking Law Section 590, which governs licensed mortgage bankers, an entity that issues five or more mortgage loans in one year must be licensed by the superintendent, unless it is an "exempt organization." N.Y. Banking Law § 590(2)(a).  Organizations deemed exempt from the licensing requirement include federal savings banks and federal savings and loan associations.  *Id.* § 590(1)(e).  Because Downey Savings and Loan Association, F.A. is a "federal savings and loan association," which is expressly exempted from the licensing requirement of Section 590(2)(a), any claim that Downey was not authorized to write mortgages in New York is dismissed.

("Pl. Opp.").)  U.S. Bank served its reply, and the fully briefed motion was filed, on January 18, 2011.  (*See* ECF No. 21, Reply Memorandum of Law In Further Support of Defendant U.S. Bank's Motion To Dismiss Plaintiff's Complaint, dated 1/18/11 ("Def. Reply").)

## DISCUSSION

**I.   Legal standard**

**A.   Motion To Dismiss Pursuant to Rule 12(b)(6)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that it is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "[T]he issue is not whether a

8

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

A court deciding a motion to dismiss pursuant to Rule 12(b)(6) must accept as true all factual allegations contained in the complaint and draw all inferences in favor of the non-moving party. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006). Nevertheless, the court "need not accord legal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation and internal quotation marks omitted). In deciding a motion to dismiss, the court is not limited to the face of the complaint, but may also consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).

## II.  Analysis

### A.   Claims Under the Truth in Lending Act

#### 1. The Truth in Lending Act

The Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), was enacted by Congress "to assure a meaningful

disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); *see Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). In enacting TILA, Congress delegated authority to the Federal Reserve Board of Governors to promulgate implementing regulations and interpretations, known as Regulation Z. *See* 15 U.S.C. § 1604(a); *see also* 12 C.F.R. § 226 *et seq.*

In general, TILA requires creditors to provide borrowers clear, conspicuous, and accurate disclosures of the loan terms and other material information. *See* 15 U.S.C. § 1632. The required material disclosures include, but are not limited to, the amount financed, the annual percentage rate, the finance charge, the total of payments, and the payment schedule. *See* 12 C.F.R. § 226.18; *see also id.* §§ 226.23(a)(3) n.48, 226.32(c)-(d); 15 U.S.C. § 1602(u). The "finance charge" is defined as the "cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to the extension of credit." 12 C.F.R. § 226.4(a); *see also* 15 U.S.C. § 1605(a). Regulation Z lists several examples of finance charges, including interest, points, loan

10

fees, appraisal fees, credit report fees, mortgage insurance premiums, and debt cancellation fees.  *See* 12 C.F.R. § 226.4(b). In addition, Regulation Z expressly permits creditors to exclude certain fees from the finance charge, including taxes and fees "that actually are or will be paid to public officials for determining the existence of or for perfecting, releasing, or satisfying a security interest," provided that such fees are itemized and disclosed.  *Id.* § 226.4(e); *see also* 15 U.S.C. § 1605(d) (exempting from computation of finance charge "fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction"); *McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578, 586 (E.D.N.Y. 2005) ("Regulation Z also provides that satisfaction and recording fees are finance charges that are allowed to be excluded, but only if those charges are disclosed and are reasonable.").

A creditor's failure to comply with TILA's requirements can subject the creditor to statutory and actual damages and may entitle the borrower to rescission.  *See* 15 U.S.C. §§ 1635, 1640.

## 2. Rescission Under the Truth in Lending Act

### a. Understatement of Finance Charges

TILA provides that a borrower whose loan is secured by her "principal dwelling" and who has not been provided the required disclosures has the right to rescind her loan. *See* 15 U.S.C. § 1635(a). The right to rescind extends until midnight of the third business day after the latest of (i) consummation of the transaction, (ii) delivery of a notice of the right to rescind, and (iii) delivery of all the required material disclosures. 12 C.F.R. § 226.23(a)(3); *see also* 15 U.S.C. § 1635(a). If the creditor fails entirely to deliver the required notice of the right to rescind or to provide the required material disclosures, the borrower's right to rescind the transaction expires three years after the earlier of (i) the date of consummation of the transaction and (ii) the date the property is sold. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3).

Plaintiff asserts that she is entitled to rescind her loan pursuant to TILA "[a]s a result of Defendants['] failure to provide accurate *material* disclosures . . . ." (ECF No. 1, Compl. ¶ 56.) Defendants move to dismiss plaintiff's request for rescission, arguing that because plaintiff received all of the notice and disclosures required by law, she may not benefit

from an extended three-year rescission right and her action is therefore time barred.  (ECF No. 19-2, Def. Mem. at 6-7.)

The Complaint specifically alleges that the amounts listed on Line 1201 of the HUD-1 Settlement Statement for recording fees and filing fees were "not bona fide and reasonable."  (ECF No. 1, Compl. ¶ 29.)  Those amounts indicate that defendants charged plaintiff a total of $555 in recording fees, including $195 for recording the deed, $280.00 for recording the mortgage, and $80.00 for the release.  (*Id.* at 30.)  Plaintiff alleges that "the actual cost of Recording Fees and filing fees for this Transaction [was]: Mortgage $187.00; Deed $52.00 + Filing Fee $75.00, and Satisfaction of Mortgage $42.00," for a total of only $356.  (*Id.* ¶ 28; *see also id.* at 55-58; ECF No. 18-3, Pl. Opp. at 10.)  Plaintiff further alleges, "[t]he inaccuracy of the TILA Disclosure Statement, Finance Charges varies by more than $100.00 and is understated." (ECF No. 1, Compl. ¶ 45.)  Drawing all reasonable inferences in plaintiff's favor, as the court must, she appears to be alleging that defendants charged her $199 more to record the transaction than they actually paid to public officials to do so.

In *McAnaney v. Astoria Financial Corp.*, 665 F. Supp. 2d 132, 148 n.16 (E.D.N.Y. 2009), the district court noted that a recording fee was "properly excluded from the finance charge to the extent that it comes under the exception for '[f]ees and

13

charges prescribed by law which actually are or will be paid to public officials'" under 15 U.S.C. § 1605(d)(1), but found that where the creditor collected $36.50 from the borrower for recording and the county filing fee was only $34.00, "the overpayment of $2.50 should have been included in the finance charge." Thus, because plaintiff has asserted that the amount of recording and filing fees disclosed at Closing in the HUD-1 Settlement Statement exceeded the amount actually paid to a public official, she alleges an understatement in the disclosed finance charge.[6]

Defendants insist that even if the finance charge is understated, dismissal is nonetheless warranted because any alleged inaccuracy in the finance charge falls within the tolerances for accuracy provision under TILA and Regulation Z. (ECF No. 19-2, Def. Mem. at 10-13; ECF No. 21, Def. Reply at 2-5.) *See* 15 U.S.C. § 1605(f); 12 C.F.R. § 226.23(g). Pursuant

---

[6] Although defendants argue in their memorandum of law that any inaccurate disclosures with respect to the recording and filing fees were overstatements and therefore "not considered material disclosure violations under Regulation Z," (*see* ECF No. 19-2, Def. Mem. at 11), defendants appear to have abandoned this argument in their reply brief, (*see* ECF No. 21, Def. Reply at 2-5). In any event, this argument is meritless because the case law supports the proposition that overcharging a borrower for recording and filing fees constitutes an understatement of the finance charge. *See McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 148 n.16 (E.D.N.Y. 2009); *see also Payton v. New Century Mortg. Corp.*, Nos. 03 C 333, 03 C 703, 2003 U.S. Dist. LEXIS 18366, at *12-13 (N.D. Ill. Oct. 10, 2003) (holding that only the actual recording fee paid to a public official was properly excluded from the finance charge); *Frazier v. Accredited Home Lenders, Inc.*, 607 F. Supp. 2d 1254, 1261 (M.D. Ala. 2009) (where good faith estimate showed that plaintiff was charged $120 for the recording fee, but the actual amount paid for recording was only $56, the court found that "$64 of the recording fee was not bona fide and should be added to the finance charge").

to TILA and Regulation Z, a finance charge "shall be considered accurate" if the amount disclosed "(i) is understated by no more than 1/2 of 1 percent of the face amount of the note or $100, whichever is greater; or (ii) is greater than the amount required to be disclosed."  12 C.F.R. § 226.23(g)(1); *see also* 15 U.S.C. § 1605(f)(2)(A).  In this case, if applicable, this provision would permit an understatement of up to $1,625 on plaintiff's $325,000 mortgage before plaintiff may rescind on this basis.

Plaintiff argues that she is exempted from the tolerance for accuracy provision by 15 U.S.C. § 1635(i)(2), which governs "rescission rights in foreclosure" and provides that "after initiation of any judicial or nonjudicial foreclosure process," a finance charge shall be considered accurate if it is understated by no more than $35.  (ECF No. 1, Compl. ¶ 50; ECF No. 18-3, Pl. Opp. at 11-14.)  *See also* 12 C.F.R. § 226.23(h)(2).[7]  Plaintiff asserts that "the foreclosure

_____

[7]  Defendants argue that the $35 tolerance applies only if the foreclosure process has been initiated "AND if either (i) 'a mortgage broker fee is not included in the finance charge in accordance with the laws and regulations in effect at the time the consumer credit transaction was consummated' OR (ii) 'the form of notice of rescission for the transaction is not the appropriate form of written notice.'" (ECF No. 19-2, Def. Mem. at 9 (citing 15 U.S.C. § 1635(i)(1); ECF No. 21, Def. Reply at 2.)  *See also* 12 C.F.R. § 226.23(h)(1).  However, defendants offer no support for this reading of the statute.  Further, a plain reading of 15 U.S.C. § 1635(i)(1) demonstrates that the additional conditions defendants seek to impose are not, in fact, a prerequisite for the $35 tolerance level to apply to plaintiff's rescission claim after a foreclosure process has been initiated.  Rather, 15 U.S.C. § 1635(i)(1) offers borrowers an *additional* opportunity for rescission after the initiation of the foreclosure process where (a) a mortgage broker fee is not included or (b) the form of notice of rescission was not appropriate.

process [was] initiated" on August 5, 2009, when U.S. Bank sent her a Notice of Intent to Foreclose. (ECF No. 18-3, Pl. Opp. at 14; *see also* ECF No. 1, Compl. ¶ 48; *id.* at 65.) Defendants, on the other hand, contend that foreclosure proceedings did not commence until June 23, 2010, when U.S. Bank filed a foreclosure action in New York State court.[8] (ECF No. 19-2, Def. Mem. at 10 n.4; ECF No. 21, Def. Reply at 3-4.)

For the purpose of determining the applicable tolerance for disclosures in a rescission action, "[t]he question is not whether . . . a judicial foreclosure *action* was commenced but whether a judicial foreclosure *process* was." *Glucksman v. First Franklin Fin. Corp.*, 601 F. Supp. 2d 511, 513 (E.D.N.Y. 2009). In this case, although U.S. Bank did not file a foreclosure action until June 23, 2010, *see U.S. Bank v. Midouin*, No. 9952/2010 (N.Y. Sup. Ct.), it sent plaintiff a Notice of Intent to Foreclose on August 5, 2009, (*see* ECF No. 1, Compl. at 65). "The fact that [defendant] did not file a

---

Indeed, 15 U.S.C. § 1635(i)(1) expressly provides that the rescission rights provided by that section are "*in addition* to any other right of rescission available under this section for a transaction." (emphasis added).

[8] Defendants cite *McCutcheon v. America's Servicing Co.*, 560 F.3d 143 (3d Cir. 2009) in support of their argument that "sending a notice of intent to foreclose is not equivalent to initiating the foreclosure process" and that foreclosure proceedings did not commence until U.S. Bank filed its foreclosure action in state court. (ECF No. 21, Def. Reply at 2-3; *see also* ECF No. 19-2, Def. Mem. at 9-10.) However, in that case, the Third Circuit Court of Appeals emphasized that Pennsylvania law "expressly differentiates the sending of an Act 91 letter from the actual initiation of foreclosure" and further noted that the creditor "did not follow through on its warning and actually initiate foreclosure." *McCutcheon*, 560 F.3d at 149. Defendants have not proferred any similar circumstances in this case.

Summons and Complaint for foreclosure [until June 23, 2010] is
not dispositive. . . .  The court need not determine here
whether and when the foreclosure process actually began; these
are questions of fact better left to examination after
discovery." *Glucksman*, 601 F. Supp. 2d at 513.  Thus, viewing
the allegations in the light most favorable to plaintiff, as it
must, the court finds it plausible that a judicial foreclosure
process had been initiated against the property by the time
plaintiff commenced the instant action seeking rescission, and
therefore the applicable tolerance for accuracy is $35.  (*See*
ECF No. 1, Compl. ¶ 50.)  Accordingly, because plaintiff has
alleged that defendants understated the finance charge "by more
than $100.00," (*id.* ¶ 45), and she filed her claim within three
years of the December 11, 2006 Closing date, she has presented a
plausible claim to relief.

### b. Plaintiff's Willingness and Ability to Tender the Loan Proceeds

Finally, defendants argue that even if the finance
charge was not fully disclosed, plaintiff's failure to assert
that she is willing and able to tender the loan proceeds
requires dismissal of her rescission claim.  (ECF No. 19-2, Def.
Mem. at 14-15; ECF No. 21, Def. Reply at 5-7.)

Title 15 U.S.C. Section 1635(b) sets forth the
sequence of events that must be followed when a borrower seeks

17

rescission of her loan.  Within twenty days of the borrower's notification that she is exercising her right of rescission, the creditor must return any money or property given as earnest money, downpayment, or otherwise, and reflect the termination of its security interest that was created by the transaction. After the creditor has satisfied these obligations, the borrower must tender the property or its reasonable monetary value.  15 U.S.C. § 1635(b).[9]  The statute does not require the debtor to tender the loan proceeds prior to rescission.  Rather, it is apparent from the plain language of the statute that the

---

[9]  The full text of 15 U.S.C. § 1635(b) reads as follows:

> When an obligor exercises his right to rescind under subsection (a) [of this section], he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.  Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor.  If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.  The procedures prescribed by this subsection shall apply except when ordered by a court.

borrower's obligation to tender the property arises only "[u]pon the performance of the creditor's obligations." *Id.*

The statute further provides, however, that a district court may alter this sequence of rescission and tender. *See* 15 U.S.C. § 1635(b) ("The procedures prescribed by this subsection shall apply except when otherwise ordered by a court."). Numerous courts have exercised their equitable discretion under TILA to condition rescission of a loan on the borrower's return of the loan proceeds to the creditor.[10]  Whether the court, in its equitable discretion, should require plaintiff to tender the loan proceeds prior to rescission "will depend on the equities present in a particular case." *Palmer v. Wilson*, 502 F.2d 860, 862 (9th Cir. 1974).  *See, e.g.*, *Moazed v. First Union Mortg. Corp.*, 319 F. Supp. 2d 268, 272 (D. Conn. 2004) (granting creditor's motion for summary judgment and refusing to enforce borrower's attempted rescission where "it [was] undisputed that

---

[10]   *See Scott v. Long Island Sav. Bank*, No. 85-CV-2904, 1989 U.S. Dist. LEXIS 15720, at *10 (E.D.N.Y. Dec. 29, 1989), *vacated in part on other grounds*, 937 F.2d 738 (2d Cir. 1991) ("Courts have held that 'although the right to rescind is statutorily granted [under TILA], it remains an equitable doctrine subject to equitable considerations.'" (quoting *Brown v. Nat'l Permanent Fed. Sav. & Loan Ass'n*, 683 F.2d 444, 447 (D.C. Cir. 1982))); *Palmer v. Wilson*, 502 F.2d 860, 862 (9th Cir. 1974) ("[I]t is within the district court's equitable power . . . to condition enforcement of the rescission order on the debtor's tender of the principal of the loan received from the creditor."); *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 254 (6th Cir. 1980) ("[S]ince rescission is an equitable remedy the court may condition the return of monies to the debtor upon the return of property to the creditor."); *Powers v. Sims & Levin*, 542 F.2d 1216, 1222 (4th Cir. 1976) ("[W]hen rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due.").

the principal balance cannot be returned" and rescission would create a windfall for borrower).

Here, the court finds that plaintiff has sufficiently alleged her willingness and ability to return the loan proceeds to defendants. Although the Complaint itself does not expressly tender the loan, the court may also consider the exhibits attached to the Complaint and any documents incorporated by reference in the Complaint. *See, e.g.*, *Ogbon v. Beneficial Credit Servs.*, No. 10-CV-03760, 2011 U.S. Dist. LEXIS 11615, at *7 (S.D.N.Y. Feb. 1, 2011) (looking to police report incorporated by reference into the complaint to determine when credit card account was opened). The March 20, 2009 letter from plaintiff's counsel to Downey seeking rescission of plaintiff's loan, which plaintiff attached to the Complaint, expressly stated that plaintiff "would like to discuss tender arrangements for the amount due" and represented that upon rescission of her loan, plaintiff "will tender all sums to which [Downey] is entitled." (ECF No. 1, Compl. at 62.) To that end, counsel requested "an itemized loan disbursement statement, the loan charges, the current principal balance, and all payments received from [plaintiff], so that [plaintiff] may determine the exact amount needed for tender." (*Id.* at 61.)

Defendants have not cited any binding authority that requires plaintiff to allege with specificity her ability to

tender in order to state a claim for rescission under TILA, particularly where the instant plaintiff advised defendants that she would tender sums due to defendants. Moreover, the court at this time lacks sufficient evidence to assess the equities and exercise its discretion to condition rescission on plaintiff's tender of the loan. Rather, these are issues of fact more appropriately resolved at a later stage in the litigation. *See, e.g., Palmer*, 502 F.2d at 862-63 (remanding so district court could request additional affidavits or hold an evidentiary hearing concerning whether it should condition the grant of rescission on repayment by the borrower); *Johnson v. Chase Manhattan Bank USA, N.A.*, No. 07-CV-526, 2007 U.S. Dist. LEXIS 50569, at *15 (E.D. Pa. July 11, 2007) (denying as premature a motion to dismiss for failure to tender loan proceeds where "[t]here is not yet any record . . . of the plaintiffs' inability to return the proceeds of the loan or any of the other circumstances this court would be obliged to consider if making a decision on equitable grounds"). Accordingly, defendants' motion to dismiss plaintiff's claim for rescission is denied.

### 3. Damages Under the Truth in Lending Act

Plaintiff further claims that she is entitled to damages pursuant to 15 U.S.C. § 1640. Specifically, in Count Two of the Complaint, plaintiff alleges that defendants (i) failed to provide accurate required disclosures prior to

21

consummation of the transaction, in violation of 15 U.S.C.

§ 1638(b) and 12 C.F.R. § 226.17(b); (ii) failed to make the

required disclosures "clearly and conspicuously" in writing, in

violation of 15 U.S.C. § 1632(a) and 12 C.F.R. § 226.17(a)(1);

(iii) understated the finance charge, in violation of 15 U.S.C.

§ 1605 and 12 C.F.R. § 226.4; and (iv) failed to provide an

accurate TILA Disclosure Statement, in violation of 15 U.S.C.

§ 1602(u) and 12 C.F.R. § 226.23(a)(3).  (ECF No. 1, Compl.

¶ 65.)  In addition, in Count One of the Complaint, which is

incorporated in full into Count Two, plaintiff asserts that

defendants' "failure to lawfully respond [to plaintiff's

rescission notice] gives rise to statutory and actual damages

under 15 U.S.C. § 1640."  (*Id.* ¶ 60; *see also id.* ¶ 63.)[11]

---

[11]   Count One alleges, in relevant part:

> 58. Defendants have a fiduciary duty and
> obligation to perform upon a valid notice of
> rescission by canceling this specific
> Transaction as well as any enforcement thereof.
> Accordingly, any alleged security instrument
> and notice of default and election to sell is
> void and unenforceable under 15 U.S.C.
> § 1635(b).
>
> 59. Defendants had twenty-days (20) to refund
> or credit the alleged account all monies paid
> and to void the security interest, or seek
> judicial guidance.
>
> 60. Defendants performance is a condition
> precedent to Plaintiff's duty to tender and
> failure to lawfully respond gives rise to
> statutory and actual damages under 15 U.S.C.
> § 1640.

(ECF No. 1, Compl. ¶¶ 58-60.)

### a. Alleged Failure to Provide Required Disclosures

Defendants assert that plaintiff's claims for damages under TILA are time barred. (*See* ECF No. 19-2, Def. Mem. at 15-17.)  Pursuant to 15 U.S.C. § 1640(e), a borrower seeking damages under TILA must file an action "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Even after the one-year period has expired, however, a borrower may nonetheless assert the right to damages "in an action to collect the debt . . . as a matter of defense by recoupment or set-off in such action." *Id.* It is well-settled law that where a claim for damages under TILA is premised on the failure to provide material disclosures, "the 'date of the occurrence of the violation' is no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by transmitting the funds to plaintiffs." *Cardiello v. Money Store, Inc.*, No. 00-CV-7332, 2001 U.S. Dist. LEXIS 7107, at *19 (S.D.N.Y. June 1, 2001), *aff'd*, 29 F. App'x 780 (2d Cir. 2002); *see also Johnson v. Scala*, No. 05-CV-5529, 2007 U.S. Dist. LEXIS 73442, at *10 (S.D.N.Y. Oct. 1, 2007) ("Case law supports the notion that the statute of limitations for TILA claims does not start running upon the discovery of the non-disclosure, but, rather, upon the funding of the loan.").

Plaintiff argues that the one-year statute of limitations does not apply here because her claims for damages

in effect constitute a recoupment defense to the foreclosure sale initiated by defendants.  (ECF No. 18-3, Pl. Opp. at 17-19.)  Plaintiff's argument is unavailing.  In contrast to the language in 15 U.S.C. § 1635(i)(2), which reduces the tolerance for accuracy applicable for rescission "after initiation of any judicial or nonjudicial foreclosure *process*," the language in 15 U.S.C. § 1640(e) refers only to an "*action* to collect the debt . . . ."  (emphasis added).  In order to bring a claim for damages after the one-year limitations period has expired, plaintiff must assert her claims as a defense by recoupment "in a collection action brought by the lender."  *Beach*, 523 U.S. at 412.  "[B]ecause here plaintiff asserts [her] TILA claim affirmatively, in an action for damages that [she herself] commenced, and not as a defense 'in an action to collect the debt,'" her claim cannot constitute a recoupment defense.  *Van Pier v. Long Island Sav. Bank, FSB*, 20 F. Supp. 2d 535, 536 (S.D.N.Y. 1998).  *See also Woods v. Greenpoint Mortg. Funding, Inc.*, No. 2:09-1810, 2010 U.S. Dist. LEXIS 41492, at *9 (E.D. Ca. Apr. 27, 2010) ("[W]hen a debtor files suit against her creditor, the claim by the debtor is affirmative rather than defensive." (citation and internal quotation marks omitted)).  Accordingly, because plaintiff did not file her claims within one year of the December 11, 2006 Closing date, plaintiff's

claims for damages based on defendants' alleged non-disclosures under TILA are dismissed as time barred.[12]

### b. Alleged Failure to Honor Rescission Notice

Nonetheless, plaintiff's claim for damages under TILA based on defendants' alleged failure to honor plaintiff's rescission notice survives the instant motion to dismiss. (*See* ECF No. 1, Compl. ¶¶ 58-60.)[13]   The failure to respond to a valid notice of rescission within twenty days of receipt is a separate violation of TILA.   *See* 15 U.S.C. § 1635(b).[14]   If a creditor

---

[12]   Even assuming *arguendo* that plaintiff attempted to invoke the doctrine of equitable tolling, such tolling would not be available here.   The Second Circuit has held that equitable tolling is appropriate "[w]here [the] defendant is responsible for concealing the existence of plaintiff's cause of action."   *Veltri v. Bldg. Serv. 32b-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004).   Specifically, the defendant must have committed either: "(1) 'a self-concealing act' – an act committed during the course of the breach that has the effect of concealing the breach from the plaintiff; or (2) 'active concealment' – an act distinct from and subsequent to the breach intended to conceal it."   *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 189 (2d Cir. 2001). "The courts have held uniformly that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations."   *Cardiello v. Money Store, Inc.*, No. 00-CV-7332, 2001 U.S. Dist. LEXIS 7107, at *15-16 (S.D.N.Y. June 1, 2001) (citation omitted).   Although plaintiff has alleged that defendants withheld information from her "willfully, persistently, intentionally, knowingly, and/or in gross or reckless disregard of the Plaintiff's disclosure and substantive rights," (ECF No. 1, Compl. ¶ 53), she makes no allegation that defendants took affirmative steps to conceal information from her.   Thus, equitable tolling of the statute of limitations is not appropriate in this case.

[13]   Defendants contend that plaintiff "waived her initial attempt to rescind the loan" by continuing to make payments after sending a letter seeking rescission of the loan.   (ECF No. 19-2, Def. Mem. at 8 n.3.)   This is incorrect.   "Plaintiff[] [has] a statutory right of rescission under TILA, which, if exercised, voids the contract and makes later ratification legally impossible."   *Stump v. WMC Mortg. Corp.*, No. 02-CV-326, 2005 U.S. Dist. LEXIS 4304, at *28 (E.D. Pa. Mar. 16, 2005); *see also* 15 U.S.C. § 1635(b). Accordingly, insofar as plaintiff's counsel's March 20, 2009 letter was a valid request for rescission, that request is not waived by continuing to make payments.

[14]   *See also Woods v. Greenpoint Mortg. Funding, Inc.*, No. 2:09-1810, 2010 U.S. Dist. LEXIS 41492, at *10 (E.D. Ca. Apr. 27, 2010) ("T]he failure to honor plaintiff's rescission request or request for information is a separate

does not respond within the statutorily-mandated period, TILA permits a borrower to bring an action for damages against the creditor. *See id.* § 1640(a). A claim for damages for failure to honor a rescission request is unquestionably subject to the statute of limitations, which requires an action for damages to be brought "within one year from the date of the occurrence of the violation." *Id.* § 1640(e). Numerous courts, however, have held that where an action for damages is premised on a failure to honor a rescission notice, the violation is deemed to have occurred on "the earlier of when the creditor refuses to effectuate rescission, or twenty days after it receives the notice of rescission."[15] Here, plaintiff's counsel sent Downey a request for rescission on March 20, 2009. Because it does not

---

actionable violation of TILA."); *Stewart v. BAC Home Loans Servicing, LP*, No. 10-CV-2033, 2011 U.S. Dist. LEXIS 24715, at *17 (N.D. Ill. Mar. 10, 2011) ("A claim for damages for failure to honor rescission is based on § 1635(b) of TILA, which requires a creditor to respond to a notice of rescission within twenty days of receipt."); *Sall v. Bounassissi*, No. 10-CV-2245, 2011 U.S. Dist. LEXIS 75363, at *22-23 (D. Md. July 13, 2011) (holding that a claim for damages based on creditor's failure to honor a rescission notice "is separate and distinct" from any claims associated with disclosures at the time of closing); *Abel v. Knickerbocker Realty Co.*, 846 F. Supp. 445, 449-50 (D. Md. 1994) (awarding damages for creditor's failure to honor request for rescission).

[15] *Kruse v. Countrywide Home Loan Servicing, LP*, No. 09-CV-2844, 2010 U.S. Dist. LEXIS 108248, at *9 (D. Colo. Sept. 22, 2010). *See also Woods*, 2010 U.S. Dist. LEXIS 41492, at *11 ("If a creditor receives a timely Notice of Cancellation and then refuses to cancel the loan, the borrower has one year from the refusal to file suit for damages pursuant to 15 U.S.C. § 1640." (citing *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1165 (9th Cir. 2002))); *Sall*, 2011 U.S. Dist. LEXIS 75363, at *22-23 ("Because [plaintiff] sued within a year of his rescission notice (and its subsequent denial), his claim for damages is timely."); *Sherzer v. Homestar Mortg. Servs.*, No. 07-CV-5040, 2010 U.S. Dist. LEXIS 137315, at *34 (E.D. Pa. May 7, 2010) (violation deemed to have occurred "on the date by which the lender was required to respond to the notice of rescission"), *adopted in relevant part*, 2010 U.S. Dist. LEXIS 66354 (E.D. Pa. June 30, 2010).

appear that Downey refused to effectuate rescission within 20 days after plaintiff's request, the one-year statute of limitations began to run on April 9, 2009, 20 days after plaintiff's notice of rescission.  Plaintiff filed her Complaint on September 25, 2009, less than one year after April 9, 2009. Thus, insofar as defendants move to dismiss as untimely plaintiff's claim for damages based on defendants' failure to honor plaintiff's request to rescind the transaction, defendants' motion is denied.

**B.  Damages Under the Real Estate Settlement Procedures Act**

Plaintiff's next cause of action seeks damages pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA").  The principal purpose of RESPA is to "insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges . . . ."  12 U.S.C. § 2601(a).  Under RESPA, the servicer of a "federally related mortgage loan," which includes a loan "secured by a first or subordinate lien on residential real property," is required to provide a written response within 20 days of receiving a "qualified written request" for information about the servicing of such a loan unless the action requested is taken within that period.  *Id.*

§ 2605(e)(1); *see also id.* § 2602(1)(A). RESPA also requires the servicer, within 60 days of receiving the request, to "make appropriate corrections" or to "conduct[] an investigation [and] provide the borrower with a written explanation" of the reasons for any action taken. *Id.* § 2605(e)(2). Further, "[d]uring the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request . . . a servicer may not provide information regarding any overdue payment . . . to any consumer reporting agency." *Id.* § 2605(e)(3). A servicer who fails to comply with any of these requirements is subject to actual and statutory damages. *Id.* § 2605(f).[16]

Plaintiff alleges that defendants violated RESPA by (i) "failing to make any appropriate corrections to the Plaintiff's account in response to [her March 20, 2009 qualified written request]," in violation of 12 U.S.C. § 2605(e)(2)(A);

---

[16] Title 12 U.S.C. Section 2605(f) provides, in relevant part:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>
> (1) Individuals
>
> In the case of any action by an individual, an amount equal to the sum of –
>
>> (A) any actual damages to the borrower as a result of the failure; and
>>
>> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1000.

12 U.S.C. § 2605(f)(1).

(ii) "refusing to cease its collection efforts of the rescinded transaction," in violation of 12 U.S.C. § 2605(e)(2); and (iii) "providing information to consumer reporting agencies regarding overdue payments allegedly owed by Plaintiff," in violation of 12 U.S.C. § 2605(e)(3).  (ECF No. 1, Compl. ¶¶ 71-73.)  For these alleged violations, plaintiff seeks statutory and actual damages.  (*Id.* ¶ 75.)

### 1. Alleged Reporting to Consumer Reporting Agencies (12 U.S.C. § 2605(e)(3))

To allege a violation of 12 U.S.C. § 2605(e)(3), plaintiff must assert (i) that she sent defendants a qualified written request; (ii) that defendants submitted information regarding plaintiff's overdue payments to a credit reporting agency; and (iii) that defendants submitted such information within 60 days after defendants received plaintiff's qualified written request.[17]  *See Gorham-DiMaggio v. Countrywide Home Loans*, No. 08-CV-019, 2009 U.S. Dist. LEXIS 52078, at *26-27 (N.D.N.Y. June 19, 2009); *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 868 (N.D. Ill. 2002).

---

[17]  Title 12 U.S.C. Section 2605(e)(3) provides:

> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to any dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency . . . .

Here, defendants do not dispute that plaintiff's March 20, 2009 letter was a qualified written request.[18]  (*See* ECF No. 19-2, Def. Mem. at 19; ECF No. 21, Def. Reply at 9.)  Further, the Complaint alleges that "[u]pon information and belief," defendants provided information regarding plaintiff's overdue payments to consumer reporting agencies.  (ECF No. 1, Compl. ¶ 73.)  However, plaintiff fails to allege *when* such information was provided.  Without more, plaintiff's claim is insufficient to state a violation of 12 U.S.C. § 2605(e)(3), and is dismissed without prejudice.[19]  Nevertheless, because leave to amend a

---

[18] A "qualified written request" is a written correspondence that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).  Plaintiff's counsel's March 20, 2009 letter includes plaintiff's name and account number, states that plaintiff seeks to rescind the transaction, lists a number of alleged errors in the disclosures plaintiff received upon Closing, and requests "an itemized loan disbursement statement, the loan charges, the current principal balance, and all payments received" from plaintiff.  (*See* ECF No. 1, Compl. at 59-63.)  The court finds for purposes of this motion that plaintiff made a qualified written request.

[19]  *See, e.g.*, *Gorham-DiMaggio*, 2009 U.S. Dist. LEXIS 52078, at *26 (finding insufficient to state a cause of action plaintiff's allegation that "'[a]fter the June request for an explanation of her escrow and an accounting, Defendants provided information regarding an overdue payment to the consumer reporting agency'"); *Jones v. Select Portfolio Servicing, Inc.*, No. 08-CV-972, 2008 U.S. Dist. LEXIS 33284, at *30 (E.D. Pa. Apr. 22, 2008) (dismissing claim under 12 U.S.C. § 2605(e)(3) where plaintiff "makes no allegation that Defendant reported any information regarding Plaintiff's loan to any consumer reporting agency at any time, let alone within the requisite sixty day period for a RESPA violation"); *Corazzini v. Litton Loan Servicing LLP*, No. 1:09-CV-199, 2011 U.S. Dist. LEXIS 63565, at *38-39 (N.D.N.Y. June 15, 2011) (where complaint alleged that defendant placed "incorrect and derogatory information on [her] credit report before the statutory mandated time frame," court found that such "bare allegations are insufficient to survive summary judgment"). *Cf. Taggart v. Norwest Mortg., Inc.*, No. 09-CV-1281, 2010 U.S. Dist. LEXIS 2263, at *14 (E.D. Pa. Jan. 11, 2010) (where complaint alleged that "derogatory entries concerning the loan in question appeared on his credit reports within the 60-day period," plaintiff pled sufficient facts to bring a

complaint should be freely given, the court will permit
plaintiff to amend her Complaint to cure this deficiency. *See*
Fed. R. Civ. P. 15(a)(2).

### 2. Actual Damages Pursuant to RESPA

Defendants argue that plaintiff's remaining claims
under RESPA also must be dismissed for failure to allege actual
damages. (*See* ECF No. 19-2, Def. Mem. at 18; ECF No. 21, Def.
Reply at 8-9.)  Notably, "[t]o have a viable cause of action
under RESPA . . . individuals must show not only the failure to
comply with the provisions of Section 2605, but also actual
damages to the borrower as a result of the failure, as set forth
in 2605(f)(1)(A), as well as any additional damages that the
court may allow in the case of a pattern or practice of
noncompliance with the requirements of Section 2605, in an
amount not to exceed 1,000 dollars."  *In re Griffin*, No. 10-
22431, 2010 Bankr. LEXIS 3555, at *9-10 (Bankr. S.D.N.Y. Aug.
31, 2010).  Accordingly, dismissal of a claim under 12 U.S.C.
§ 2605 is appropriate where the complaint "merely prays for
relief without specifying the injury [plaintiff] suffered."
*Gorham v. Bank of Am., N.A.*, No. 09-CV-1150, 2010 U.S. Dist.
LEXIS 41797, at *10-11 (N.D.N.Y. Apr. 28, 2010).

---

claim under § 2605(e)(3)); *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d
863, 868 (N.D. Ill. 2002) (allegations that defendant "provided information
to a consumer reporting agency within sixty days of [plaintiff] sending a
qualified written request" are "sufficient to state a claim for a violation
of RESPA.").

Here, the Complaint alleges that "[a]s a result of the acts specifically alleged above, Plaintiff has suffered loss of retirement savings, loss of income, nausea, emesis, constant headaches, insomnia, embarrassment, and incurred an ascertainable loss." (ECF No. 1, Compl. ¶ 54.)[20]  Further, Count Three of the Complaint states that plaintiff is "entitled to recoup the actual and statutory civil penalty provided by RESPA." (*Id.* ¶ 75.)  The court finds that plaintiff has sufficiently alleged that she suffered damages, including but not limited to a loss of savings and income, caused by defendants' purported RESPA violations.[21]  Accordingly,

---

[20]  In her opposition to defendants' motion, plaintiff states, "[a]t minimum, actual damages would include all economic injuries that directly flow from Defendant's failure to make appropriate corrections to the account.  These damages may encompass: cost of photocopies and postage in sending the QWR, time spent obtaining compliance, transportation cost, inconvenience, additional interest, late fees, foreclosure costs, loss of home through foreclosure, denial of access to credit, and damage to credit rating." (ECF No. 18-3, Pl. Opp. at 21.)  However, in deciding a motion to dismiss, the court's review is limited to the complaint and documents attached to the complaint or incorporated therein by reference.  *See DiFolco*, 622 F.3d at 111.  Plaintiff may not amend her Complaint via statements in her opposition papers. *See Kosovich v. Metro Homes, LLC*, No. 09-CV-6992, 2009 U.S. Dist. LEXIS 121390, at *14-15 n.6 (S.D.N.Y. Dec. 29, 2009) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989))).

[21]  *See, e.g.*, *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) (cited in *Gorham-DiMaggio*, 2009 U.S. Dist. LEXIS 52078, at *29) (denying motion to dismiss where complaint alleged that plaintiffs suffered "negative credit ratings on their credit reports [and] the inability to obtain and borrow another mortgage loan and other financing"); *Cortez v. Keystone Bank, Inc.*, No. 98-CV-2457, 2000 U.S. Dist. LEXIS 5705, at *39-40 (E.D. Pa. May 2, 2000) ("Actual damages encompass compensation for any pecuniary loss including such things as time spent away from employment while preparing correspondence to the loan servicer, and expenses for preparing, photocopying and obtaining certified copies of correspondence."); *Johnstone v. Bank of Am., N.A.*, 173 F. Supp. 2d 809, 814 (N.D. Ill. 2001) (finding sufficient under RESPA the allegation that "[a]s a result of [defendant] violating § 2605(e) . . . [plaintiff] . . . (3) has paid late fees; [and] (4)

plaintiff's remaining claims for actual damages pursuant to 12 U.S.C. § 2605(f)(1)(A) survive defendants' motion to dismiss.[22]

### C. Damages Under New York General Business Law Section 349

Finally, invoking the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, plaintiff seeks damages and an injunction pursuant to New York General Business Law ("NYGBL") § 349. The court understands plaintiff's allegations in Count Four of the Complaint to assert that defendants violated NYGBL § 349 by (1) misstating plaintiff's monthly income on her loan application, (ECF No. 1, Compl. ¶¶ 30, 82, 86); (2) failing to require plaintiff to verify her income or employment, (*id.* ¶¶ 17, 31, 86); and (3) giving

---

[defendant] has foreclosed on her property"); *Manzano v. MetLife Bank N.A.*, No, 2:11-CV-651, 2011 U.S. Dist. LEXIS 85458, at *10 (E.D. Cal. Aug. 2, 2011) (denying motion to dismiss where "Plaintiff avers that [defendant's] allegedly unlawful disclosure of adverse loan information resulted in her inability to 'obtain credit or refinancing' and caused her to 'incur excessive interest costs and penalties . . . in excess of $100,000.00.'"). *Cf. Gorham-DiMaggio*, 2009 U.S. Dist. LEXIS 52078, at *29-30 (dismissing claim where complaint alleged only that plaintiff "was damaged"); *Gorham*, 2010 U.S. Dist. LEXIS 41797, at *10-11 (dismissing claim where amended complaint "merely prays for relief without specifying the injury [plaintiff] suffered"); *In re Jude Jacques*, 416 B.R. 63, 73-74 (Bankr. E.D.N.Y. 2009) (finding statement that "Plaintiff[] may recover of the Defendant actual damages, costs and reasonable attorney fees" failed to show proximate causation or actual pecuniary damages); *Jones v. Select Portfolio Serv., Inc.*, No. 08-CV-972, 2008 U.S. Dist. LEXIS 33284, at *29 (E.D. Pa. Apr. 22, 2008) (cited in *Gorham-DiMaggio*, 2009 U.S. Dist. LEXIS 52078, at *29) (dismissing claim where complaint sought "compensatory damages in excess of $50,000, together with costs, statutory damages and other relief" but did not allege any specific damages or allege a causal link between the alleged violations and damages).

[22]  Because plaintiff does not allege anywhere in the Complaint that defendants engaged in a "a pattern or practice of noncompliance" with RESPA, her claim for statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B) is dismissed.

plaintiff the loan, (*id.* ¶¶ 31, 86).  Defendants seek to dismiss
these claims, arguing that they are preempted by the Home
Owners' Loan Act, 12 U.S.C. § 1461 *et seq.* ("HOLA") and its
implementing regulations, 12 C.F.R. § 560.1 *et seq.*[23]  For the
reasons set forth below, the court agrees that plaintiffs'
claims under NYGBL § 349 are preempted by HOLA.

The Home Owners' Loan Act provides that the Office of
Thrift Supervision ("OTS") is responsible for regulating
federally chartered savings associations ("FSAs") such as
Downey.  *See* 12 U.S.C. §§ 1463(a), 1464(a).  (*See also* ECF No.
19-2, Def. Mem. at 24 (asserting that Downey Savings and Loan
Association, F.A. is a savings and loan association).)  Pursuant
to the OTS's implementing regulations, "OTS . . . occupies the
entire field of lending regulation for federal savings
associations." 12 C.F.R. § 560.2(a).  Further, in 12 C.F.R.
§ 560.2(b), the OTS provides illustrative examples of the types
of state laws preempted by OTS regulation, including but not
limited to state laws purporting to impose requirements
regarding "[d]isclosure and advertising, including laws
requiring specific statements, information, or other content to

---

[23] Plaintiff states in her opposition to defendants' motion that she "will
not argue against whether the Home Owners' Loan Act ("HOLA") preempts state
law." (ECF No. 18-3, Pl. Opp. at 24.)  Instead, she argues that "no
authority exists that a Truth in Lending rescission claim standing alone
preempts the New York GBL." (*Id.*)  Thus, plaintiff does not appear to
challenge defendants' argument that plaintiff's state law claims are
preempted by HOLA.

be included in credit application forms" (§ 560.2(b)(9)) and

"[p]rocessing, origination, servicing, sale or purchase of, or

investment or participation in, mortgages" (§ 560.2(b)(10)).

Subsection (c) identifies certain types of state laws, such as

state contract, commercial, real property, and tort law, that

"are not preempted to the extent that they only incidentally

affect the lending operations of [FSAs] . . . ." 12 C.F.R.

§ 560.2(c). According to the OTS, the preemption analysis under

Section 560.2 proceeds as follows:

> [T]he first step will be to determine
> whether the type of law in question is
> listed in paragraph (b). If so, the
> analysis will end there; the law is
> preempted. If the law is not covered by
> paragraph (b), the next question is whether
> the law affects lending. If it does, then,
> in accordance with paragraph (a), the
> presumption arises that the law is
> preempted. This presumption can be reversed
> only if the law can clearly be shown to fit
> within the confines of paragraph (c). For
> these purposes, paragraph (c) is intended to
> be interpreted narrowly. Any doubt should
> be resolved in favor of preemption.

*Cedeno v. IndyMac Bancorp, Inc.*, No. 06-CV-6438, 2008 U.S. Dist.

LEXIS 65337, at *19-20 (S.D.N.Y. Aug. 25, 2008) (quoting 61 Fed.

Reg. 50951, 50966-67 (Sept. 30, 1996)).

NYGBL § 349 declares unlawful "deceptive acts or

practices in the conduct of any business, trade or commerce or

in the furnishing of any service in this state." N.Y. Gen. Bus.

Law § 349(a). "[A]s a general matter, claims brought under

broad consumer deceptive practices such as [NYGBL] § 349 are not preempted because they simply seek to enforce truthfulness in commercial transactions, which is expected of federal thrift institutions as a baseline matter." *McAnaney*, 665 F. Supp. 2d at 167; *see also Binetti v. Wash. Mut. Bank*, 446 F. Supp. 2d 217, 220 (S.D.N.Y. 2006) (holding that NYGBL § 349 is "a commercial statute of general applicability which, while having an incidental impact on lending relationships, is excepted from OTS preemption under [12 C.F.R.] § 560.2(c)"). Nevertheless, "OTS field preemption applies to state laws of general applicability insofar as such laws are invoked to restrict areas, such as loan-related fees, that are field-preempted under 12 C.F.R. § 560.2(b)." *Tombers v. Fed. Deposit Ins. Corp.*, No. 08-CV-5068, 2009 U.S. Dist. LEXIS 91208, at *17 (S.D.N.Y. Sept. 30, 2009); *see also Cedeno*, 2008 U.S. Dist. LEXIS 65337, at *28 (finding NYGBL § 560.2(b) preempted by HOLA where "the plaintiff's claims [arose] out of conduct directly regulated by the OTS: the processing and origination of mortgages, a loan-related fee, and the accompanying disclosure"). Thus, a "limited exception" to the general rule that HOLA does not preempt claims under NYGBL § 349 exists where a party brings "claims which attempt to establish extra-contractual substantive requirements upon federal savings associations which more than

incidentally affect lending operations." *McAnaney,* 665 F. Supp. 2d at 167.

Here, the crux of plaintiff's allegations under NYGBL § 349 is that the loan application Downey prepared should have disclosed more clearly plaintiff's income and employment information. Further, plaintiff appears to assert that Downey had a duty to verify her monthly income and employment status, and not process her loan if Downey found she could not afford to repay it. Insofar as plaintiff is invoking NYGBL § 349 to regulate Downey's conduct, her claims are aimed at conduct directly regulated by the OTS: the disclosures included in her credit application form and the processing of her loan. *See* 12 C.F.R. § 560.2(b)(9), (10). Because plaintiff's claims do not arise from a breach of contract, but rather attempt to "establish extra-contractual substantive requirements" for savings associations such as Downey, her claims seek an application of state law that would more than incidentally affect federal lending practices. Accordingly, plaintiff's claims under NYGBL § 349 are preempted by HOLA.[24]

## CONCLUSION

For the reasons set forth above, (i) defendants' motion to dismiss plaintiff's claim for rescission pursuant to

---

[24] Because plaintiff's claims under NYGBL § 349 are preempted by HOLA, the court need not consider whether plaintiff has sufficiently stated a claim under NYGBL § 349.

15 U.S.C. § 1635 is denied; (ii) defendants' motion to dismiss plaintiff's claim for damages pursuant to 15 U.S.C. § 1640 for failure to honor plaintiff's request for rescission is denied; (iii) defendants' motion to dismiss plaintiff's additional claims for damages pursuant to 15 U.S.C. § 1640 is granted; (iv) defendants' motion to dismiss plaintiff's claims for damages pursuant to 12 U.S.C. §§ 2605(e)(2) and (e)(2)(A) is denied; (iv) defendants' motion to dismiss plaintiff's claim for damages pursuant to 12 U.S.C. § 2605(e)(3) is granted, with leave for plaintiff to amend within 30 days of this Order; and (v) defendants' motion to dismiss plaintiff's claim for damages pursuant to New York General Business Law § 349 is granted.

**SO ORDERED.**

Dated: September 28, 2011
      Brooklyn, New York

                    _____/s/_____
                    KIYO A. MATSUMOTO
                    United States District Judge
                    Eastern District of New York